THOMAS FONTANA, PLAINTIFF-RESPONDENT, v. POLISH NATIONAL ALLIANCE OF BROOKLYN, U. S. A., ALSO KNOWN AS ZJEDNOCZENIE POLSKA NOVADOWE, DEFENDANT-APPELLANT.

Argued May 20, 1943—Decided September 16, 1943.

For the plaintiff-respondent, *Feder & Rinzler (Jack Rinzler).*

For the defendant-appellant, *Aaron Heller* and *Aldon S. Patlen.*

The opinion of the court was delivered by

CASE, J. The fundamental question is whether the writing from a real estate broker to an owner under *R. S.* 25:1–9 is a compliance with the statute unless it is so phrased as to put the owner on fair notice that an oral agreement is claimed.

The defendant is a fraternal organization. It owned and desired to sell a property in Garfield. Defendant published a newspaper which it sent to its members; and Mrs. Mary Myl who, with her husband, later bought the property testifies that, having received a copy, she read therein that the property was listed for sale; moreover, she lived in the neighborhood. In May of 1939, and at other times, Mrs. Myl, according to her testimony, made inquiry about the property, as a prospective purchaser, of Ignezey Kecmer, vice grandmaster of the defendant organization and its representative in charge of real estate in New Jersey, and of Antoni Rusyn, president of the Alliance and collector of its rentals; and so

did her husband, Martin Myl, according to his testimony. Both inquirers were given the information asked for and were informed of the asking price—$11,500. Kecmer confirms this as to the inquiries made of him. Rusyn died after the events with which he was involved and before the trial. This (except Rusyn's death) was all prior to October, 1939.

In the latter part of October, 1939, the plaintiff, Thomas Fontana, a real estate broker, telephoned to Rusyn and asked him if the property was open for sale. He was told that it was. He asked for the price and the answer was "We're asking $11,500." On November 13th, 1939, Rusyn went by appointment to Fontana's office and was taken, without knowledge as to where he was to go or whom he was to see, to the Myl store and there again saw Mrs. Myl. He talked with her very briefly in the Polish language, which Fontana did not understand, and left the room. Fontana, on returning to his office, immediately wrote and posted by registered mail to the defendant corporation a letter reading as follows:

"This letter is with further reference to the sale of property at 122 Wood Street, corner Lanza Avenue, Garfield, N. J., in which case you have met the prospective purchaser, Mrs. M. Myls, on Monday afternoon, November 13, 1939. I wish to advise you that after you had left her store, she told me that she would be interested in talking business, sometime next week, as she wanted to take up the matter with her husband, first. The price I quoted her for the property is $11,500; the terms, of course, to be subject to your approval. Should Mrs. Myls call on you personally, you will know that this came about through my efforts. Should the above mentioned prospect purchase your property, I shall be entitled to the usual commission of five (5%) per cent. of the sale price."

That is the notice which is relied upon as being a compliance with the statute.

Fontana testifies that Rusyn said to him on the afternoon of November 13th, "You'll get your commission [viz., 5%] if these people purchase the property" and that several months later Rusyn told him to "keep away" from Mrs. Myl, that the latter was negotiating with Rusyn and that in the event

of a sale plaintiff would be "remembered on" his commission; and those statements are said to constitute the supporting oral agreement. So far as appears there were no negotiations between Fontana and the Myls after November 13th. Mrs. Myl says that there were not and Fontana does not say that there were. On June 25th, 1940, the defendant organization effected a sale of the property to Martin Myl and Mary Myl, his wife, for $9,500. The deed was dated July 1st, 1940, and was recorded shortly thereafter. Fontana sued for and recovered commissions in the Clifton District Court in the amount of $475. The judgment was appealed to the Supreme Court, whose affirmance is now before us.

Error is specified in the refusal of the trial court to nonsuit and, later, to direct a verdict for the defendant.

Competent proof of everything contained in the notice would not, without more, support a recovery, for there can be no recovery without either an agreement in writing with its statutory content or an oral agreement with its statutory incidents, and there is nothing in the notice of November 13th, 1939, or elsewhere in writing brought home to the defendant or any of its officers or representatives about an agreement.

The act regulating commissions of broker and real estate agents on the sale of land was passed as chapter 215 of the Pamphlet Laws of 1873 (p. 50); it was later incorporated into the statute for the prevention of frauds and perjuries, *Rev.* 187, *p.* 446, § 10; it was retained without substantial change in the Compiled Statutes of 1910, page 2617, section 10; and it was amended by chapter 331, *Pamph. L.* 1911, in manner not pertinent to the present issue. The essence of the statute until 1918 was, as it had ever been, that no broker or real estate agent selling or exchanging land on account of the owner should be entitled to receive any commission for the sale or exchange except the authority, including the rate of commission on the dollar, was in writing and signed by the owner or his authorized agent. The statute declared a public policy which was that unless there was a written contract there was an absence of right to compensation for services, *Stout* v. *Humphrey,* 69 *N. J. L.* 436, 442;

and that public policy persists except as the legislature has changed it. By chapter 273, *Pamph. L.* 1918, an amendment was enacted which, while it retained the general provision as noted, inserted a *proviso* which appears as a separate, but not as a separately numbered, paragraph in the 1937 Revision, 25:1–9, still within the statute of frauds. As printed in the current revision it is in part thus:

"Any broker or real estate agent selling or exchanging real estate pursuant to an oral agreement with the owner of such real estate, who shall actually effect such sale or exchange before such oral agreement shall have been repudiated or terminated by the owner in writing as hereinafter provided, may recover from such owner the amount of commission on such sale or exchange, if the broker or agent shall, within five days after the making of the oral agreement and prior to the actual sale or exchange of such real estate, serve upon the owner a notice in writing, setting forth the terms of the oral agreement and stating the rate or amount of commission to be paid thereunder. and if the owner shall not have repudiated or terminated the oral agreement prior to the actual sale or exchange of the real estate."

It is manifest that the 1918 amendment was intended to better the position of the broker, but it is equally clear that an agreement with the owner was still a prerequisite; an agreement which might be oral but which, if oral, should be followed by a writing from the broker to the owner setting forth the terms of the oral agreement with the right in the owner thus notified to repudiate or terminate the agreement. For the broker to give notice that he has solicited a prospective purchaser and will be entitled to a named percentage on the sale price if that person should purchase, but not to state that the potential claim for compensation is based upon an oral agreement, is to omit the vital fact upon which the statutory proviso is conditioned; yet respondent argues, as under the exigencies of his case he is obliged to argue, that such a notice complies with the statute.

Clearly, the owner, in proper circumstance, is permitted either to repudiate or to terminate the oral agreement; but how is an owner, if he is innocent of having made an agree-

ment, or is unmindful that that which has been said or done may be held out as an agreement, to apprehend, unless he is put on notice, that there is something which, for his protection, should be repudiated or terminated? That which the statute provides may be repudiated or terminated is the existence of an oral agreement, not a bare statement by the broker that he will be entitled, unsupported by an assertion of the agreement without which he can have no standing. There is no legal right in the broker unless there is an agreement; and there is no occasion under the law for an owner to make an answer of any sort to a writing from a broker unless the broker's position is fortified by an agreement. Further, there is no understandable reason why a broker, in giving the statutory notice, should not say that he claims an agreement if there was in fact one, unless he fears that the owner will repudiate or terminate the same—a motive that clashes directly with the legislative purpose in requiring the notice.

The logic of the statute appears clearly in the recited proofs in the present case. It is said that Rusyn made an oral agreement for the payment of commissions. But Rusyn was not the party sued. True, he was the president of the defendant association, but it is in evidence, without denial, that he had no power to undertake to sell real estate without the authority of the board of directors and that his sole authority concerning the defendant's real estate was to collect rents. "It is fundamental that an agreement to bind the corporation must be its act, either (1) by its corporate action, or (2) because made by its authorized agent, or (3) by its ratification." *Lloyd W. Casner, Inc.,* v. *Raleigh, &c., Hospital,* 112 *N. J. L.* 252. No corporate action in the making of an agreement is shown, and no authority of Rusyn to make such an agreement is proved. The only contemporaneous knowledge of Fontana's position that was brought home to the corporation was the written notice, and there was no ratification unless the sale of the property after the receipt of the notice was such. With Rusyn dead, it was impossible for the defendant to deny that he had said the words which Fontana at the trial imputed to him; but if

Fontana's writing had contained notice that an oral agreement was claimed it would have been within the disposition of the defendant, at that time, to have ascertained the fact, and to have governed its movements—whether by way of acceptance, repudiation, termination or withholding from the ultimate sale—by what it then learned. We think that the requirement of the statute—"a notice in writing, setting forth the terms of the oral agreement"—is not satisfied unless the owner is apprised that the terms which the notice contains are claimed by the broker to be the terms of an oral agreement between him and the owner.

Respondent cites as *contra* that view in the opinion of the Supreme Court in *Rooney* v. *Greiner*, 3 *N. J. Mis. R.* 996. We think that the opinion does not carry the significance attributed to it. Moreover, the opinion does not state the full contents of the notice served in the case and the court files do not appear to contain that data. We are in accord with the implications of a later opinion by the Supreme Court in *Soloff* v. *Atlantic Coast Building and Loan Association*, 10 *Id.* 1150, unanimously affirmed by this court (on the opinion below), 110 *N. J. L.* 528, wherein it was said in criticism that the notice "does not state the sale price, makes no reference to the alleged oral agreement, and does not even say there was any such agreement."

Very few of the reported decisions disclose precisely the form of the notice served by the broker. In *Fieldman* v. *Thomas*, 10 *N. J. Mis. R.* 48, the notice began thus: "As per our understanding I am to receive a commission," &c. Examination of the files, in so far as they are available in other reported cases, gives the following results: In *Baron* v. *Wisnowski*, 102 *N. J. L.* 46, the notice was: "Please be advised that I, the undersigned, claim a commission * * * pursuant to an agreement between you and me whereby you agreed to pay me a commission * * *," giving with other data, the amount of commission and the sale price. In *Casale* v. *Gash*, 104 *Id.* 21: "This is to confirm our arrangement that," &c., stating the alleged agreement. In *Polow* v. *Silverman*, 105 *Id.* 424: "In pursuance to the oral agreement made on Monday, the 23d day of May, 1927, with the under-

signed, notice is hereby being served upon you setting forth the terms of such oral agreement, to wit:" &c., setting forth the terms of the alleged oral agreement. The form last recited was the most complete, but all of the notices indicate an understanding on the part of the draftsman that the recipient should be told that the notice rests upon an agreement.

We conclude that the notice in writing given by a real estate broker or agent to an owner under *R. S.* 25:1-9 does not comply with the statute unless it carries the information that the terms therein contained are given as the terms of an oral agreement; and inasmuch as the notice in the case under review did not contain that information, the motions for nonsuit and direction of verdict should have been granted.

The judgment below will be reversed.

*For affirmance*—THE CHIEF JUSTICE.   1.

*For reversal*—THE CHANCELLOR, PARKER, CASE, DONGES, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ.   11.