45 N.J. Super. 318 (1957)
132 A.2d 543
CHARLES R. MYERS, II, PLAINTIFF-RESPONDENT,
v.
GEORGE BUFF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1957.
Decided June 10, 1957.
*319 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. William C. Gotshalk argued the cause for plaintiff-respondent.
Mr. William G. Freeman argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff, a real estate broker, sued defendant in the Camden County District Court for brokerage commissions of $594 allegedly earned in connection with a sale made by defendant to Freihofer Baking Company of certain unimproved property. He recovered a judgment in the amount stated, and defendant appeals, relying on that section of the statute of frauds, N.J.S.A. 25:1-9, which deals with brokerage commissions.
The district court found that in fact defendant orally agreed to pay plaintiff a commission amounting to 10% of the sale price if the sale to Freihofer was effected; and, further, that immediately after the making of this agreement, plaintiff wrote the following letter to the defendant confirming it:
 "January 25, 1956
 Mr. George Buff
 Penny Plates, Inc.
 30 Washington Avenue
 Haddonfield, New Jersey
Dear Mr. Buff:
In accordance with our conversation, we have quoted a price of $7,400 for the easterly section (200 x 247.68) of your tract of land on the south side of Davis Road, east of the railroad, Magnolia, *320 New Jersey, to the Freihofer Baking Company. This is at the rate of $6,000 an acre, plus ten per cent sales commission.
 Very truly yours,
 Chas. R. Myers, II
 CRM/cmg"
The court also found that the plaintiff introduced Buff to Freihofer and "began their negotiations," which culminated in a sale and conveyance of the property to Freihofer for $5,940. Buff, though he received the above letter, never replied to it; nor did he, in any way prior to the sale, disavow its terms. Four and a half months after the letter, this action was started for $594, 10% of the $5,940.
Does the letter comply with the following portion of N.J.S.A. 25:1-9, particularly the words italicized below:
"Any broker or real estate agent selling or exchanging real estate pursuant to an oral agreement with the owner of such real estate, who shall actually effect such sale or exchange before such oral agreement shall have been repudiated or terminated by the owner in writing as hereinafter provided, may recover from such owner the amount of commission on such sale or exchange, if the broker or agent shall, within five days after the making of the oral agreement and prior to the actual sale or exchange of such real estate, serve upon the owner a notice in writing, setting forth the terms of the oral agreement and stating the rate or amount of commission to be paid thereunder, and if the owner shall not have repudiated or terminated the oral agreement prior to the actual sale or exchange of the real estate."
This statutory provision was authoritatively construed in Fontana v. Polish National Alliance, etc., 130 N.J.L. 503 (E. & A. 1943):
"* * * For the broker to give notice that he has solicited a prospective purchaser and will be entitled to a named percentage on the sale price if that person should purchase, but not to state that the potential claim for compensation is based upon an oral agreement, is to omit the vital fact upon which the statutory proviso is conditioned; yet respondent argues, as under the exigencies of his case he is obliged to argue, that such a notice complies with the statute.
Clearly, the owner, in proper circumstance, is permitted either to repudiate or to terminate the oral agreement; but how is an owner, if he is innocent of having made an agreement, or is unmindful *321 that that which has been said or done may be held out as an agreement, to apprehend, unless he is put on notice, that there is something which, for his protection, should be repudiated or terminated? That which the statute provides may be repudiated or terminated is the existence of an oral agreement, not a bare statement by the broker that he will be entitled, unsupported by an assertion of the agreement without which he can have no standing * * *.
* * * We think that the requirement of the statute  `a notice in writing, setting forth the terms of the oral agreement'  is not satisfied unless the owner is apprised that the terms which the notice contains are claimed by the broker to be the terms of an oral agreement between him and the owner."
It was settled by that case that the broker's notice to the owner, which is provided for by the statute, is fatally defective unless the owner is thereby apprised that he had agreed to pay the broker commissions. The notice need not use the word "agreement," but it must at least impliedly inform the owner of an agreement on his part to pay such commissions.
The single question before us is whether the letter of January 25 impliedly apprises the defendant here that he had undertaken to pay plaintiff commissions. The critical clause in that letter as we read it, is Myers' opening statement: "In accordance with our conversation, we have quoted a price of $7400," etc. The word "accordance" signifies agreement, conformity or harmony. Hence the clause may mean (as we think it does) that Buff had stated in the conversation that he would sell the land to Freihofer for $7,400, and that Myers in conformity therewith had quoted to Freihofer the price of $7,400. Or it may possibly mean that the price of $7,400 was merely in harmony with some assertion of Buff, as, that he was willing to sell the land at $6,000 per acre net to him; in other words, that the price was built up by Myers out of a statement or statements Buff had made in the conversation. As we say, we are inclined to think that the import of the letter is that Buff at the conversation said Myers could quote a price of $7,400. This is the simple, more natural significance of the language. We feel that "in accordance with" is synonymous here, as *322 it commonly is in letters, with "pursuant to," and that by this letter Buff was put on notice that he was being charged with having declared that Myers could offer the property to Freihofer at a figure of $7,400.
Like any offer, it was a promise on Buff's part to sell at that price. 1 Williston, Contracts § 24A (1936); Restatement, Contracts § 24; cf. 1 Corbin, Contracts §§ 11, 13 (1950). To say that by the use of the word "quoted," the letter indicates only a tentative undertaking to sell, something less than an offer, is unrealistic. Buff agreed to the stated price; doubtless the only tentative aspect of the proposal was that he realized he might have to lower the price.
The further inference of the letter is that in calculating the price of $7,400, the brokerage commission was included therein. The tract, 200' x 247.68', amounts roughly to 1.1 acres. At $6,000 an acre, Buff was to receive $6,600. Adding thereto 10% commission on $7,400, namely, $740, the price comes to $7,340.
In our view if it once be determined (as we have already determined) that the letter declares that Buff had said he would sell Freihofer the property for $7,400, then it carries the inescapable inference that out of this price which was to come to him, he would himself pay Myers' commission. In the letter, therefore, Myers impliedly apprises the owner that the latter had undertaken to pay the commissions at the rate of 10%.
The implication is there, it cannot be denied. The question before us really is how obvious must that implication be. In Wollenburg v. Rynar, 96 N.J. Eq. 38 (Ch. 1924), V.C. Backes was called upon to decide whether the following receipt or memorandum complied with the statute of frauds, N.J.S.A. 25:1-5d  in particular, whether it contained an agreement to convey:
"Newark, N.J. Nov. 15, 1922. Received from F.R. Wollenburg, $60.00, deposit on 10 ft. (ten ft.) land adjoining stores at Clinton Place and Hawthorne Avenue; depth according to deed. Balance to be paid within two months, the sum of five hundred dollars."
*323 The vice-chancellor held that the receipt contained an implication of an agreement to convey and therefore satisfied the statute. He went on to say that the memorandum required by the statute
"`Need not contain apt, definite and explicit words expressing the agreement to convey; it is sufficient if such an agreement may be implied from the language employed, * * *.'"
That case is law in this State. See Stamato v. Agamie, 24 N.J. 309 (1957), and decisions cited. The statute of frauds must be adhered to, N.J.S.A. 25:1-9, as well as 25:1-5. But there is no more reason to spin out a technical interpretation of the one section, than of the other. In our view here, a right-thinking person in Buff's position was put on notice that as agreed in the conversation, Myers had offered the property at $7,400, which included commissions of 10%, and that these commissions (it is to be implied) Buff was to  that it, had agreed to  turn over or pay to Myers.
In dealing with the sufficiency of a "notice," or a "memorandum or note," called for by the statute of frauds (N.J.S.A. 25:1-9; 25:1-5), we should not lose sight of the purpose of that statute, underlying its various provisions. Corbin has this to say on the point:
"What is that purpose? It is the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made. It is not to prevent the performance or the enforcement of oral contracts that have in fact been made; it is not to create a loophole of escape for dishonest repudiators. Therefore, we should always be satisfied with `some note or memorandum' that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail." (Italics added.) 2 Corbin, Contracts 680 (1950).
It is to be observed that the district court found, on the basis of substantial proofs before it, that an agreement was in fact made between defendant and the broker, by which *324 the former agreed to pay to the latter commissions of 10%. However, we need not in this case pass upon the very general, perhaps too general, criterion laid down by Corbin, because we think, as above stated, the letter puts Buff impliedly on notice of such an agreement on his part.
Affirmed.
JAYNE, J.A.D. (dissenting).
A dissenting judge has the conscientious right to be wrong as well as to be right. I enthusiastically enter the modern crusade to harmonize the law with life, but I decline to regard yesterday's established precedents as serviceable only in teaching us not to repeat yesterday's mistakes. If some wing of the statute of frauds is now to be clipped, let the Legislature do it, and if the judiciary is not materially to alter the Legislature's understanding of the statute, then in my opinion the judgment under review in the present appeal should be reversed.
The present appeal introduces for our determination a relatively slender question. The agreed statement of the evidence submitted to us pursuant to R.R. 1:6-3, R.R. 2:6, discloses but little discordancy concerning the material facts beneath the legal issue in controversy.
Succinctly explained, the judgment under review was rendered in conformity with the decision of the judge of the Camden County District Court in favor of the plaintiff in the sum of $594 in an action in which the plaintiff sued the defendant for the recovery of a real estate broker's commission alleged to have been lawfully earned by negotiating the conveyance of the defendant's premises situate in the Borough of Magnolia, Camden County, to Freihofer Baking Company for the price of $5,940.
The core of the appellate subject pertains to the application of N.J.S.A. 25:1-9 to the factual findings of the trial judge. Admittedly the plaintiff had no authority in writing or recognition of such authority in writing to sell the property signed by the owner or his agent. Vide, Stout v. Humphrey, 69 N.J.L. 436 (E. & A. 1903); Kagan v. Berman, 14 N.J. 467 (1954).
*325 The statute, however, now embodies the following augmentation:
"Any broker or real estate agent selling or exchanging real estate pursuant to an oral agreement with the owner of such real estate, who shall actually effect such sale or exchange before such oral agreement shall have been repudiated or terminated by the owner in writing as hereinafter provided, may recover from such owner the amount of commission on such sale or exchange, if the broker or agent shall, within five days after the making of the oral agreement and prior to the actual sale or exchange of such real estate, serve upon the owner a notice in writing, setting forth the terms of the oral agreement and stating the rate or amount of commission to be paid thereunder, and if the owner shall not have repudiated or terminated the oral agreement prior to the actual sale or exchange of the real estate."
The trial judge announced the conclusion that the defendant "orally agreed to pay the plaintiff 10% of the sale price if the sale was effected," and that "said agreement was confirmed by a letter admittedly received by the defendant from the plaintiff marked exhibit P-1."
The exhibit designated P-1 to which the judge referred is here reproduced:
 "January 25, 1956
 Mr. George Buff
 Penny Plates, Inc.
 30 Washington Avenue
 Haddonfield, New Jersey
Dear Mr. Buff:
In accordance with our conversation, we have quoted a price of $7,400 for the easterly section (200 x 247.68) of your tract of land on the south side of Davis Road, east of the railroad, Magnolia, New Jersey, to the Freihofer Baking Company. This is at the rate of $6,000 an acre, plus ten per cent sales commission.
 Very truly yours,
 Charles R. Myers, II"
In the determination of the present appeal we must recognize as pertinent and precedential the decisions in Fontana v. Polish National Alliance, &c., 130 N.J.L. 503 (E. & A. 1943); Soloff v. Atlantic City Bldg. & Loan Ass'n, 10 N.J. Misc. 1150 (Sup. Ct. 1932), affirmed 110 N.J.L. 528 (E. & A. 1933). In the former, it was stated that:
*326 "* * * For the broker to give notice that he has solicited a prospective purchaser and will be entitled to a named percentage on the sale price if that person should purchase, but not to state that the potential claim for compensation is based upon an oral agreement, is to omit the vital fact upon which the statutory proviso is conditioned; yet respondent argues, as under the exigencies of his case he is obliged to argue, that such a notice complies with the statute.
Clearly, the owner, in proper circumstance, is permitted either to repudiate or to terminate the oral agreement; but how is an owner, if he is innocent of having made an agreement, or is unmindful that that which has been said or done may be held out as an agreement, to apprehend, unless he is put on notice, that there is something which, for his protection, should be repudiated or terminated? That which the statute provides may be repudiated or terminated is the existence of an oral agreement, not a bare statement by the broker that he will be entitled, unsupported by an assertion of the agreement without which he can have no standing. There is no legal right in the broker unless there is an agreement; and there is no occasion under the law for an owner to make an answer of any sort to a writing from a broker unless the broker's position is fortified by an agreement. Further, there is no understandable reason why a broker, in giving the statutory notice, should not say that he claims an agreement if there was in fact one, unless he fears that the owner will repudiate or terminate the same  a motive that clashes directly with the legislative purpose in requiring the notice."
Vide, 10 Rutgers L. Rev. (1955) 410, 417 et seq.; Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 582 (1956).
Here, to me, it is perfectly obvious that the so-called notice in writing (exhibit P-1) does not specifically or impliedly represent the asserted preexistence of an oral agreement in which the defendant covenanted to pay a commission to the plaintiff. It is merely an informative message that a purchase price including a "ten per cent sales commission" has been "quoted" to the Freihofer Baking Company.
One of the requisite and indispensable ingredients of such an effectual written notice is the assertion by the broker or his representative in some express or reasonably implicit diction of the existence of the prior oral agreement, its terms, and the rate or amount of the commission which the owner thereby covenanted to pay.
*327 It is with regard to the adequacy of the legal import of the notice that I respectfully disagree with my associates. I cannot ascribe to the words "in accordance with our conversation we have quoted" the requisite informative communication to the defendant of a logical implication of the existence of his oral contractual obligation to pay a broker's commission to the plaintiff in the eventual sale of the premises. Contrast the composition of the notices considered by our then highest appellate court in the Fontana and Soloff cases, previously cited, both of which were adjudged to be statutorily ineffectual.
By the rationalism enunciated in those decisions, the notice dispatched to the owner in the present instance appears to me to be manifestly deficient. I would reverse the judgment under review, and direct the entry of one in favor of the defendant.