LESLIE BLAU, PLAINTIFF-RESPONDENT, v. MORRIS FRIEDMAN AND BETTY FRIEDMAN, DEFENDANTS-APPELLANTS.

Argued March 4, 1958—Decided April 3, 1958.

*Mr. Hymen B. Mintz* argued the cause for the appellants.

*Mr. Aaron Lasser* argued the cause for the respondent (*Messrs. Lasser & Lasser,* attorneys; *Mr. H. Lee Sarokin,* on the brief).

The opinion of the court was delivered by

JACOBS, J.   The Appellate Division, in an opinion reported at 46 *N. J. Super.* 573 (*App. Div.* 1957), affirmed the Law Division's judgment for the plaintiff for brokerage commission in a real estate transaction which was never consummated.   We granted certification under *R. R.* 1:10–2.

In April 1947 the defendant Morris Friedman and his aged mother Sarah purchased premises at Elmwood Avenue, Irvington.   The deed was in the name of Morris alone, but in May 1947 Morris and Sarah executed an instrument of trust in which Morris declared that he held a half part of the premises in trust for Sarah, who in turn declared that Morris, as trustee, shall have power to sell the premises at such time and for such price and upon such terms as he shall see fit.   In 1952 Sarah executed and recorded an instrument which set forth that she thereby revoked the trustee's power of sale embodied in the May 1947 declara-

tion of trust, but Morris states that he knew nothing whatever of his mother's action when he, along with his wife, Betty, authorized the plaintiff Leslie Blau, realtor, to represent them in the sale of the premises.

The testimony by the defendants with respect to their transaction with the plaintiff was to the following effect: A man named Teltser, employed by Blau, called and asked Morris whether he wanted to sell his apartment building at Elmwood Avenue and stated that he could get a fair price for him. Morris said that he would sell and two days later Teltser came to him with a form authorization which he and his wife Betty signed. It was dated May 28, 1956 and authorized Blau to represent them as their exclusive agent for the sale of the "land and building which we own" at Elmwood Avenue, Irvington; it contained an agreement that they would pay a commission "equal to 5% of the total purchase price if, as and when title to the property actually passes to the purchaser." Thereafter Morris received a letter from Blau (signed by J. Frank Brooks, manager, and dated June 14, 1956) advising that he had obtained a purchaser; the letter requested that Morris instruct his attorney to draw the contract of sale and forward it to Mr. Mandelbaum, 17 Academy Street, Newark. Morris did call his attorney, Mr. Herships (who was also attorney for Sarah) and then learned about the 1952 instrument of revocation. He asked his mother to join in the sale but she refused; he offered to convey his own interest in the premises but this was refused by the purchaser; he offered to give Blau a perpetual exclusive agency with respect to the premises but this was refused. The purchaser refused to proceed with the transaction unless he could receive a marketable title and the transaction was never consummated.

On July 27, 1956 the plaintiff filed his complaint seeking recovery of brokerage commission which the defendants had refused to pay. The first count alleged that the plaintiff had produced a purchaser who was ready, willing and able to purchase the property upon the terms and conditions

set forth in the authorization of May 28, 1956 but the defendants had refused to consummate the sale and had refused to pay the plaintiff's commission. The second count alleged that the defendants had in their authorization represented that they were the owners of the property whereas they knew that it was owned partly by Sarah and that Morris "could not convey title"; that the plaintiff in reliance on the defendants' representation had expended time and money and had produced a ready, willing and able purchaser, and that the plaintiff had been "deprived of the commission he would have received had the representation been true." The pretrial order set forth that the plaintiff's proceeding was "a contract action for real estate commissions with a second count based upon fraud."

After all the testimony on behalf of the parties was introduced, the trial court rendered its opinion which determined that there should be judgment for the plaintiff in the sum of $5,685. It found that the defendants' ownership "extended only to one-half of the property" and that "another party was the equitable owner of the remaining half"; that the power of sale, "revoked or unrevoked" was not equivalent to ownership; that regardless of whether the defendants knew of the instrument of revocation they "did represent themselves as owners of the property, when in fact they knew they only owned a portion of it"; that the plaintiff, in reliance upon the defendants' representation had "produced a buyer, ready, willing and able to purchase the property"; and that the clause in the authorization conditioning the right to commission upon the actual passage of title to the purchaser could not destroy the broker's right to commission when it was "called into operation solely as a result of the seller's original misrepresentation of ownership." The Appellate Division, in affirming the trial court, concluded that in view of their misrepresentation the defendants could not take advantage of the clause which conditioned the broker's right to commission upon the actual passage of title even if they established that when they signed the authorization of May 28, 1956 they acted in

good faith and with the conscientious belief that they had unrestricted legal power to sell the entire property to the purchaser to be procured by the plaintiff. See 46 *N. J. Super.* at *pages* 581, 582.

■ Our cases hold that ordinarily an authorized broker who obtains a ready, willing and able buyer is entitled to his commission even though the sale is never consummated. See *Beckmann, Inc., v. (Zinke's) Rainbow's End, Inc.,* 40 *N. J. Super.* 193, 196 *(App. Div.* 1956), certification denied 22 *N. J.* 219 (1956); *Marschalk v. Weber,* 11 *N. J. Super.* 16, 21 *(App. Div.* 1950), certification denied 6 *N. J.* 569 .(1951). To avoid this result the seller may include a contingency clause in the authorization to the effect that the broker's commission shall be payable only if the sale is consummated and title passes to the buyer. See *Beckmann, Inc., v. (Zinke's) Rainbow's End, Inc., supra,* 40 *N. J. Super.* at *page* 198; *Todiss v. Garruto,* 34 *N. J. Super.* 333, 338 *(App. Div.* 1955), certification denied 18 *N. J.* 549 (1955); *Alexander Summer Co. v. Weil,* 16 *N. J. Super.* 94, 98 *(App. Div.* 1951); 3 *Corbin, Contracts* 956 (1951); Note, *"Special Conditions in Real Estate Brokerage Contracts,"* 32 *Colum. L. Rev.* 1194 (1932). But even the presence of the contingency clause will not prevent recovery by the broker if the sale is defeated by the seller's own willful conduct. *Keifhaber v. Yannelli,* 9 *N. J. Super.* 139, 142 *(App. Div.* 1950); *Beckmann, Inc., v. (Zinke's) Rainbow's End, Inc., supra,* 40 *N. J. Super.* at *page* 199. In the *Keifhaber* case the seller agreed that the premises located in New York would be vacated, but then deliberately withheld any steps towards removing the occupant. The court, applying New York law without, however, suggesting that it differed in this respect from New Jersey law, held that since the seller's willful conduct defeated the sale he was in no position to take advantage of the contingency clause to deprive the broker of his commission. In the *Beckmann* case, which did not involve any contingency clause in the brokerage agreement, the sale fell through because the seller had grossly misrepre-

sented the amount of business which had been done in the previous year; the court expressed the view that the broker would be entitled to his commission unless he knowingly participated in the misrepresentation.

In contrast to the foregoing there are cases in our courts which hold that a seller who has acted in good faith may take advantage of the contingency clause even though the sale falls through because of his inability to furnish a marketable title. See *Apfelbaum, Inc., v. Topf,* 104 *N. J. L.* 343 (*E. & A.* 1928); *Lippincott v. Content,* 123 *N. J. L.* 277 (*E. & A.* 1939). In the *Lippincott* case the seller, in his endeavor to acquire full title for conveyance to the buyer, brought an action to quiet title in which he did not prevail; the sale was never consummated and the court held that under the contingency clause in the seller's authorization the broker could not succeed in his action to recover commission. In the *Topf* case the sellers agreed to pay the broker's commission upon consummation of the sale with the stipulation that if for any reason not due to their default the title was not conveyed they would not be under any obligation. The sellers entered into a contract with the buyer to convey clear title but the sale fell through when a search disclosed that the premises were subject to certain restrictions in an earlier deed in the chain of title. The Court of Errors and Appeals, after pointing out that there was nothing to indicate that the sellers knew of the restrictions, sustained a judgment which dismissed the broker's action for commission; in the course of its opinion it said:

"Conceding, however, that a vendee may properly refuse to accept a deed where it appears that the title of the vendor is defective, and that that is the case here, such a situation does not *per se* determine the right of a broker to be paid a commission where the payment thereof is made expressly to depend upon the actual passing of title and consummation of the sale, unless it is made to appear that the vendor, when he entered into the contract with the real estate broker fraudulently concealed the fact of the existence of the restrictions on the property, or by some other willful act prevented the title from passing and the sale from being consummated."

The brokerage authorization in the instant matter contained a contingency clause which clearly contemplated that no commission would be payable if the sale fell through; and since the sale did fall through, allegedly because of Sarah's unwillingness to join, it affords a defense to the sellers unless, in the language of the *Topf* case, they fraudulently concealed the limited nature of their title to the property or engaged in some other willful act which prevented the consummation of the sale. It is evident that if the defendants were not acting in good faith when they signed the May 28 authorization they may not justly take advantage of the contingency clause; thus, if they knew that Sarah's instrument of revocation, whether valid or not, had been executed, or if they recklessly disregarded circumstances which would have given them such knowledge, then their nondisclosure of Sarah's equitable interest in the property would appear to be sufficient to preclude their defense under the contingency clause. On the other hand, if the defendants acted in good faith and with the conscientious belief that they had unrestricted legal power to sell the property and did not engage in some other willful act which prevented the consummation of the sale, then the contingency clause would appear to constitute a defense. It is true that the form authorization, which the plaintiff had prepared in advance with his own choice of language, described the property as the land and building which the sellers owned at Elmwood Avenue, but if the sellers then believed that they had unrestricted power to sell the property and considered in good faith that the terms of the authorization were simply descriptive of the property and their ability to convey it, then their conduct was neither intentionally misleading nor legally fraudulent in nature. There is nothing in the evidence to indicate that on May 28 it mattered to the plaintiff whether the defendants asserted title or full and unrestricted power to convey title; and although Mr. Hership's testimony, which indicated that before the purchaser was obtained Mr. Brooks had been advised of Sarah's interest, was directly disputed, there was

no explicit finding on this issue in the trial court. Similarly, there was no finding in either the trial court or the Appellate Division as to whether the sellers acted in good faith and with the belief that they had legal power to sell and convey title to the property; on the contrary, both of the lower courts acted on the view, which we find to be erroneous, that under the terms of the May 28 authorization the honest and conscientious belief of the sellers as to their unrestricted power of sale would be legally immaterial. Under all of the circumstances we consider that the interests of justice will best be served by remanding the entire proceeding to the trial court for the taking of further testimony, if necessary, and for the making of appropriate factual and legal findings and the entry of judgment in conformity with all the evidence and the principles expressed in this opinion.

Reversed and remanded.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.