56 N.J. Super. 525 (1959)
153 A.2d 739
ARTHUR C. BRUNI, PLAINTIFF-APPELLANT,
v.
FRANK J. POSLUSZNY AND LORETTA M. POSLUSZNY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1959.
Decided July 2, 1959.
*528 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Pierre P. Garven argued the cause for appellant (Messrs. Garven, Gelman & Hollander, attorneys).
Mr. Milton T. Lasher argued the cause for respondents.
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff appeals from a final judgment entered in favor of defendants after a trial without a jury.
Plaintiff, a duly licensed real estate broker, seeks to recover a $12,000 commission which he claims is due him from defendants because he allegedly produced a tenant ready, willing and able to enter into a lease of premises owned by defendants and upon terms originally satisfactory to them.
Defendants deny plaintiff's right to recovery on the ground that they had no agreement with the plaintiff as an agent other than a non-exclusive proposal that if plaintiff or any other broker produced a tenant with whom defendants actually closed a lease transaction and received rent, such broker would be paid a commission on any installment of rent received; and that since no such lease was ever executed with plaintiff's prospect, defendants are not liable, regardless of the reason why the lease was not executed.
Defendants are the owners of a one-story warehouse-type structure located in Saddle Brook. Joseph Ettore, a real estate agent employed by plaintiff, had rented the premises for defendants prior to March 1957 to Viking Sloane Company. That tenant failed to pay the rental reserved in its lease. Defendant Frank Posluszny, prior to the vacation *529 of the premises by Viking Sloane Company, sought a new tenant through the medium of newspaper advertisements.
The testimony of Ettore and Frank Posluszny concerning the oral listing of premises by defendants for rental is in sharp conflict. Ettore testified that he received a telephone call from Frank Posluszny in March 1957. During the conversation which ensued, Frank Posluszny stated:
"`Joe, I am going to take the building over, and I want to lease the building, that portion which was leased to Viking Sloane, plus an addition that I am building in the rear of approximately 12,000 square feet. You have in all around 34,000 square feet more or less,' and he says, `You are very familiar with it, and I want your office to get me another tenant.'"
Frank Posluszny, on the other hand, testified that Ettore contacted him, seeking an exclusive agency for the rental of the premises. Frank Posluszny testified:
"Q. Now, does that complete your recollection of your conversation on that occasion? A. No. Mr. Ettore asked me if he can get a listing on this, or an exclusive, or an agreement. Q. What did you say to him? A. I told him, `Joe, Mr. Ettore, I had one written agreement with you. Now I am advertising in the paper. I am going to have a free for all. In other words, like an open listing. I'm not giving any exclusive or agreement to anybody. Whoever the agent or real estate man brings a tenant and the lease is signed, and I get my rent, he will get a check monthly off me.'"
Ettore admits that Frank Posluszny refused to execute a written exclusive agency agreement.
In any event, Ettore interested Elkay Products Co., a manufacturing firm, in renting the premises. After various visits to the property, Elkay, through two of its officers (the Pillar brothers) and a New York attorney named Roth, presented a check to Posluszny on May 2, 1957 in the amount of $1,000 as a deposit on account of rental of the premises. The following legend was endorsed thereon: "subject to all other agreements and signing of lease." The parties thereupon repaired to the office of Stephen Toth, Posluszny's lawyer, where the terms of the lease were discussed. Toth was then directed to prepare a draft of a *530 written lease. On May 7, 1957 the lease was mailed to Elkay's local attorney, Job H. Lippincott, Jr. On May 10, 1957 the Pillar brothers, Roth and Lippincott presented themselves at Toth's office for the purpose of signing the lease, which they had in their possession. They testified that they were then ready, willing and able to execute the lease but were advised that Posluszny would not execute the same. However, it appears from the testimony that at least one substantial term of the agreement was still open to negotiation. Posluszny then stated that his refusal was based upon his attorney's advice. The reason now advanced is that the business conducted by Elkay was not permitted in the zone in which the building was located under the local zoning ordinance, and hence a certificate of use could not be obtained, and that some of the uses to which Elkay intended to put the premises were violative of regulations of the New Jersey Department of Labor, as they constituted a fire and toxic hazard. Testimony was introduced to support defendants' position as to these matters. Defendants thereafter leased the premises to another firm.
The trial court, in effect, found that plaintiff had not carried the burden of proof that he had an agency under which he was entitled to compensation upon the production of a tenant ready, willing and able to rent the premises upon terms announced satisfactory by the owner, regardless of whether a lease were signed. Clearly, implicit in the trial court's conclusion is the finding that Frank Posluszny had an agreement with Ettore that he would occupy the same position as any other broker whom defendant had invited to submit prospective tenants and that defendants would pay a commission to any such broker only if and when a lease were signed and then monthly upon the rental as received. Although such a finding is not spelled out with the particularity above stated, it is, in our opinion, sufficiently stated in the oral conclusions of the trial judge.
To entitle a real estate broker to compensation for services rendered there must first exist a contract of his employment, *531 which may be either express or implied. Soloff v. Josephson, 21 N.J. Super. 106, 109-110 (App. Div. 1952); cf. Beckmann, Inc. v. (Zinke's) Rainbow's End, Inc., 40 N.J. Super. 193 (App. Div. 1956), certification denied 22 N.J. 219 (1956).
Absent some qualifying or oppugnant expression in the contract of his employment, a broker earns his commission when he produces a person ready, willing and able to comply with the specific terms under which his services were engaged or other and different terms which are satisfactory to his principal.
To avoid liability for real estate commissions the person who engages a broker may, by special agreement, condition the payment of any commission upon the occurrence of an event, usually the consummation of the agreement contemplated by the engagement. Blau v. Friedman, 26 N.J. 397, 401 (1958); Beckmann, Inc. v. (Zinke's) Rainbow's End, Inc., supra, 40 N.J. Super. at page 198. The right to a commission in such a case cannot be defeated if the occurrence of the contingency is willfully prevented by the misrepresentation or conduct of the broker's principal. Blau v. Friedman, supra; Beckmann, Inc. v. (Zinke's) Rainbow's End, Inc., supra, 40 N.J. Super. at pages 199-200. In other words, the broker must prove by a preponderance of the credible evidence that his principal willfully prevented the occurrence of the contingency by his act or deed. Good faith is a defense to the broker's action. Blau v. Friedman, supra.
Due weight must be accorded the findings of the trial judge who had the opportunity to observe the witnesses and a superior opportunity to judge of their credibility. R.R. 1:5-4(b); 4:53-2; New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 317 (App. Div. 1956).
The finding of fact by the trial judge as to the true understanding of defendants as expressed to plaintiff was that the payment of commission was conditionally dependent *532 upon the signing of a lease and the payment of rent. This is corroborated by the notation on Elkay's check. The understanding so found encompassed a reservation by defendants to themselves of the right to refuse to sign a lease for any reason whatsoever. This was an entirely natural and reasonable reservation, especially considering the fact that no exclusive listing was given to any broker, but rather, that the field was open to all brokers to present tenants. Patently, defendants affirmatively sought to avoid liability to any broker prior to the signing of a lease and, to accomplish this, reserved the right to reject any prospective tenant until the formal act of execution of a written lease, and refused to sign any brokerage agreement.
We hold that the evidence was sufficient to sustain the finding of fact by the trial judge that the agreement to pay a commission was contingent upon the signing of a lease by defendants with the persons produced by plaintiff as tenants for these premises, and the receipt of rent under such lease.
We discern from the record an additional point which was not argued in the briefs. This concerns plaintiff's allegation that Elkay was ready, willing and able to execute the draft lease. The mention of one item will suffice to indicate the lack of agreement as to terms. Elkay, the prospective tenant, was to install a fire sprinkler system in the building. They wanted to recapture the cost of this installation over the term of the lease and, for that purpose, negotiations were open to amortize that outlay over a ten-year period. However, Elkay was not certain when they would install the equipment. It may not have been until the third year of their contemplated occupancy. No agreement was reached on when the equipment would be installed, the cost, or the manner of its amortization. Roth, counsel for Elkay, testified as follows:
"Q. Now, I will ask you, sir, on May 10th, 1957, at that time were you, as an attorney, willing to allow your clients, Elkay Products, to sign that lease which you have in your hand? A. Not *533 until Mr. Toth and Mr. Lippincott, or Mr. Toth and I, had made corresponding adjustments with respect to this 10 year period, about which I expected no problem at all. Otherwise, this lease was ready  we are ready to sign it."
In the light of the express provisions of the general agreement of employment and of the fact that there was no final agreement on all of the terms of the lease, it cannot be said that defendants' refusal to sign the lease constituted willful conduct.
Affirmed.