255 N.J. Super. 100 (1992)
604 A.2d 653
FEIST & FEIST REALTY CORP., PLAINTIFF,
v.
DOCKSIDE URBAN RENEWAL CORP. AND CLIFFORD H. SLAVIN, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided January 10, 1992.
*102 Philip Elberg, attorney for plaintiff (Medvin & Elberg).
Dominic J. Aprile, attorney for defendant (Bathgate, Wegener, Wouters & Neumann).
FUENTES, J.S.C.
Plaintiff Feist and Feist Realty Corp., moves for summary judgment against defendant, Dockside Urban Renewal Corp. (Dockside), claiming a broker's commission for having procured a tenant for defendant. Defendant claims that no agreement for a commission was ever made. In this case, I find that since the broker sent a letter to the owner offering a prospective tenant in exchange for a commission and the letter was not repudiated, a unilateral contract was created. The agreement is enforceable since the owner accepted the prospective tenant procured by the broker and negotiated a lease. Thus, the broker is entitled to its commission.
During 1985, plaintiff Feist & Feist Realty Corp. (Feist), sought premises for a tenant, the New York Bronze Powder Company Inc. (New York Bronze). The needs of the prospective tenant included a large industrial and warehouse facility. Feist introduced New York Bronze to a location in Newark owned by defendant Dockside Urban Renewal Corporation (Dockside). After showing the premises, Feist sent the owner a *103 letter by certified mail, dated December 18, 1985, advising the owner as follows:
For the record, if you are successful in leasing this property to New York Bronze Powder Company and/or to any companies or persons representing said company or aforementioned individuals, the offices of Feist & Feist Realty Corp. will be entitled to a commission equal to five (5%) percent of the gross aggregate rental as provided for in the said lease, plus five (5%) percent of any options, renewals, extensions or taking of additional space, whether on this property or any other property which is owned or controlled by you.
Defendant acknowledged receipt of the letter on December 19, 1985 and commenced negotiations with New York Bronze. These negotiations resulted in a lease dated April 28, 1986. The total amount of the rent was $12,941,250, for a ten year period commencing June 1, 1987. In reference to the broker, the lease provided as follows:
Section 26.16. Brokerage. Landlord and tenant represent that Feist & Feist Real Estate Co. was instrumental in consummating this Lease.... Landlord shall satisfy any commissions due to Feist & Feist by a separate agreement.
After the lease was signed, plaintiff made an immediate demand for payment of the commission. Plaintiff claimed it was entitled to 5% of the total rent or $647,062. Defendant sent no payment or written response. From July 1986 to June 1988 Feist sent Dockside six separate letters requesting payment of its commission. Dockside never responded and never objected in writing to any of the broker's requests for a commission. No commission payment was ever made. Then, in September 1988, the tenant defaulted on the lease and thereafter filed for bankruptcy.
I first consider the well established principle that when a broker is engaged by an owner of property to find a purchaser, the broker earns a commission when the broker produces a ready, willing and able purchaser who enters into a contract with the owner and the transaction is completed by a closing of title. Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551, 236 A.2d 843 (1967); Blau v. Friedman, 26 N.J. 397, 140 A.2d 193 (1958); Bruni v. Posluszny, 56 N.J. Super. 525, 153 A.2d 739 (App.Div. 1959). If, however, title closing does not *104 occur because of lack of financial ability of the buyer or because of some other buyer default, the broker has no right to a commission. Ellsworth Dobbs, Inc. v. Johnson, supra, 50 N.J. at 551, 236 A.2d 843; Kennedy v. Roach, 122 N.J. Super. 361, 364, 300 A.2d 570 (App.Div. 1973). The "crucial time" at which the broker is entitled to a commission is the closing of title. Ellsworth Dobbs, Inc. v. Johnson, supra, 50 N.J. at 552, 236 A.2d 843.
Many of the same basic principles relating to a sale apply in a leasing. Thus in a leasing, the broker's commission is not earned until the critical event, which ordinarily is the date the lease is signed. See, e.g., Bruni v. Posluszny, 56 N.J. Super. 525, 153 A.2d 739 (App.Div. 1959). And, where a prospective tenant is produced by the broker and a negotiated lease results, the broker is deemed to be the efficient procuring cause of the lease, entitled to a commission. Snyder Realty v. BMW of N. Amer., 233 N.J. Super. 65, 81, 558 A.2d 28 (App.Div. 1989); Weinstein v. Clementsen, 20 N.J. Super. 367, 372, 90 A.2d 77 (App.Div. 1952). The tenant's financial ability after a lease is negotiated has no bearing on the broker's right to the commission. Ellsworth Dobbs, Inc. v. Johnson, supra, 50 N.J. at 552, 236 A.2d 843; Hedden v. Folio, 62 N.J. Super. 470, 163 A.2d 163 (App.Div. 1960).
Defendant's primary contention is that an agreement was never consummated between broker and landlord as to a commission. Defendant points to the language of the lease which provides that payment of "any commission" to the broker would be by way of "a separate agreement." Defendant claims that this clause does not acknowledge Dockside's liability for a commission. Rather, defendant contends this provision is prospective and merely provides that Dockside's responsibility to pay a broker's fee is subject to a subsequent agreement. Dockside claims that the plaintiff's several commission proposals following signing of the lease and the subsequent negotiations *105 is evidence that an agreement was never reached. I find no merit to this contention.
Generally, a broker has no right to a real estate commission "unless their authority from the owner to find a purchaser is given in writing." Ellsworth Dobbs, Inc. v. Johnson, supra, 50 N.J. at 553, 236 A.2d 843; N.J.S.A. 25:1-9; Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 127 A.2d 13 (1956). However, our courts have held that leasing is exempt from the writing requirement of the statute of frauds. N.J.S.A. 25:1-9; Klie v. Hollstein, 98 N.J.L. 473, 120 A. 16 (1923); Bierman v. Barthelmeus, 24 N.J. Misc. 35, 45, 45 A.2d 820 (1946). Thus, an oral commission agreement between broker and owner in a leasing is enforceable. Burt v. Brownstone Realty Co., 95 N.J.L. 457, 112 A. 883 (1921); See The Real Estate Broker's Commission-Oral Agreements and the Statute of Frauds, 10 Rutgers L.Rev. 410 (1955). Moreover, a broker's expectancy of a commission may arise where the broker produces a purchaser which is accepted by the owner and a sale or lease results. Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., 44 N.J. Super. 159, 130 A.2d 48 (App.Div. 1957); Fitt v. Schneidewind Realty Corp., 81 N.J. Super. 497, 504, 196 A.2d 26 (Law Div. 1963).
In the present case, I find that plaintiff's letter contained the essential terms of an agreement between Feist and Dockside and amounted to a unilateral contract. See Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., supra, 44 N.J. Super. at 167, 130 A.2d 48. Such letters have been upheld as contracts and enforced, particularly where they specifically mention the property involved, the name of the prospective purchaser or prospective tenant and the commission to be paid if that purchaser or tenant is accepted. Myers v. Buff, 45 N.J. Super. 318, 132 A.2d 543 (App.Div. 1957); Breen v. Debron, 10 N.J. Super. 167, 76 A.2d 837 (App.Div. 1950). There is no question here that plaintiff's letter fully set forth the essential terms of the agreement. Feist's letter specifically referred to *106 the property in which their customer had an interest and then informed defendant: "[I]f you are successful in leasing the property to New York Bronze Paper, Feist & Feist Realty Corp. will be entitled to a commission equal to five (5%) percent of the gross aggregate rental as provided for in the said lease ..."
The clause relating to the commission was preceded by the phrase "[f]or the record." In the context of the entire letter, I take this phrase to mean that the broker desired to give Dockside formal notice that an agreement between plaintiff and defendant would be implied upon defendant accepting plaintiff's prospect. Plaintiff's letter clearly put Dockside on notice as to the broker's anticipated commission in the event a lease was negotiated with the broker's customer. The import of the letter is that Dockside could have rented the premises to anyone else. However, if Dockside accepted New York Bronze as a tenant the broker would be entitled to the stated 5% commission.
Defendant's claim that there was no agreement as to the specific commission and that the amount was to be resolved by "separate agreement" is also unconvincing. First, it is significant to note that the lease itself recognizes that Feist was "instrumental in consummating" the lease. Thus, Dockside specifically acknowledged the broker's role in procuring the tenant. Further, I find, the phrase "by separate agreement" in the lease in fact refers to the broker's certified letter which presented the tenant in consideration of the commission. The notion that a broker would offer its customer to an owner on a very substantial leasing arrangement without having made specific provision for the rate or amount of commission to be paid is unpersuasive and disingenuous. Here the broker's letter clearly and precisely set forth the rate of commission expected. Dockside acknowledged receipt of the letter and accepted the tenant under the conditions stated. At no time did Dockside terminate the broker's involvement or repudiate the terms of the agreement. Written repudiation is an effective protection an owner has against spurious claims for a commission. Rossy v. Phillips, 3 N.J. 226, 229, 69 A.2d 722 (1949). *107 Had Dockside disagreed with Feist's request for a 5% commission, it had a responsibility to repudiate the agreement in writing. In fact, defendant had a period of just over four months in which to repudiate the agreement prior to negotiating the lease.
Several authorities make it clear that where a party fails to repudiate an offer or remains silent and then accepts the benefit of the offer, the party may be deemed to have accepted the contract terms. For example, the Restatement of Contracts 2d § 69(1) (1979), provides that:
[w]here an offeree fails to reply to an offer, his silence and inaction operate as a acceptance [when]: (a) ... an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation. [or]
(b) ... the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
The Restatement makes it clear that acceptance of an offer may occur where the offeree fails to reply to an offer and takes the benefit of that offer. Additionally, a number of New Jersey cases have held that by reason of the relationship of the parties, a party can be required to speak in response to an offer and his silence can result in consent. Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 341, 403 A.2d 880 (1979); Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 126, 179 A.2d 505 (1962); Ridge Chevrolet  Oldsmobile Inc. v. Scarano, 238 N.J. Super. 149, 154, 569 A.2d 296 (App.Div. 1990); Fairken Assocs. v. Hutchin, 223 N.J. Super. 274, 280, 538 A.2d 465 (Law Div. 1987). In the leasing context of this case, I find that since defendant failed to reply to the broker's letter, its subsequent acceptance of the broker's customer resulted in acceptance of the broker's services for compensation.
Defendant's contention that discussions as to the commission continued after the lease was negotiated and thus there was no meeting of the minds is lacking in credibility. Upon my review of the entire record and plaintiff's various letter proposals to Dockside, I am satisfied that the discussions were not related *108 simply to reaching an agreement. Rather, they represented efforts by the broker to collect an earned commission. Here, the broker was the efficient procuring cause of the lease and earned a commission when the owner accepted plaintiff's services and entered into the lease with plaintiff's customer. Where a broker produces a prospective tenant resulting in a negotiated lease, the broker's unilateral letter agreement is enforceable.
Summary judgment is appropriate in this case. Where the language of a writing is clear and unambiguous and there is no credible evidence which would create doubt as to the meaning, the construction and effect of the writing is a matter of law to be determined by the court. Breen v. Debron, supra, 10 N.J. Super. at 170, 76 A.2d 837; Whittle v. Associated Indemnity Corp., 130 N.J.L. 576, 33 A.2d 866 (E. & A. 1943). Accordingly, since there are no remaining factual disputes, plaintiff's motion for summary judgment against defendant, Dockside, in the sum of $647,062 is granted.